IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

BILL SWICK AND GAME ON
OFFSHORE, LLC                                                                                                          APPELLANTS

V.                                                                                   CIVIL ACTION NO. 3:20-CV-300-SA

WILLIAM L. FAVA, CHAPTER 7 TRUSTEE
FOR THE ESTATE OF STEVEN KEITH JENKINS                                                          APPELLEE

MEMORANDUM OPINION

On November 12, 2020, the Appellants, Bill Swick and Game On Offshore, LLC, filed their Notice of Appeal [1] in this Court. The Appellants ask this Court to reverse an Order [2] issued by the United States Bankruptcy Court. The Appeal has been fully briefed, and, having reviewed the record, arguments of counsel, and applicable law, the Court is prepared to rule.

*Factual and Procedural Background*

On August 12, 2019, the Debtor, Steven Keith Jenkins, filed a Chapter 7 Voluntary Petition in the United States Bankruptcy Court for the Northern District of Mississippi. On January 23, 2020, the Trustee filed a Motion to Sell Property Free and Clear of Liens. *See* [9] at p. 34. In that Motion, which related to a 57-foot Miller Marine fishing boat, the Trustee averred that "[a]lthough not listed in his schedule, it has been discovered that debtor owns a Miller Marine Vessel purchased by debtor in or around May of 2015 for $300,000.00. . . Debtor is the sole owner of the Vessel, free and clear of any liens, evidenced by the fact that no debts are listed in debtor's schedules related to the Vessel. . . The Trustee requests authority from the Court to sell the Vessel free and clear of liens, interest, encumbrances, and claims to the highest bidder." *Id*. (internal citation omitted).

The Bankruptcy Court held a hearing on the Motion on October 15, 2020. The Debtor did not appear at the hearing. The only opposition to the Trustee's Motion was posed by Bill Swick, who contended that he owned a fifty-percent interest in the boat.

At the hearing, the Bankruptcy Court heard extensive testimony from Swick. Swick testified that on May 28, 2015, he, acting as Jenkins' agent, purchased the boat from Arthur Holk for $300,000.00. Although Swick physically completed the purchase on Jenkins' behalf, Swick admitted that, at the time of purchase, Jenkins was the 100 percent owner of the boat. Swick further testified that a week prior to the purchase of the boat, Jenkins and Swick both signed an Operating and Ownership Agreement, which states that "[i]t is agreed that Keith Jenkins will purchase the above vessel for $300,000. Bill Swick will make needed improvements to the sum of $300,000. Any additional improvements that exceed the $300,000 will be agreed upon and divided equally between the two owners." Hearing Ex. Trustee 7. When further questioned about the boat's ownership, Swick testified as follows:

> Q. What is Game On Offshore?
> A. Just an LLC that I started to put the boat in.
> Q. I'm going to – so you said that you put the boat in, tell me what you mean by that.
> A. Well, we were going to document the boat into the Game On Offshore LLC.
> Q. *Did you ever do that?*
> A. *No, sir.*

[9] at p. 93-94 (emphasis added).

However, when later confronted with a U.S. Coast Guard Bill of Sale dated March 22, 2016, which purports to transfer ownership in the boat from Jenkins to Game On Offshore LLC, Swick testified as follows:

> Q. What is that?
> A. Coast Guard bill of sale.
> Q. Who is the seller on that document?
> A. Keith Jenkins.
> Q. And who is the buyer?
> A. Game On Offshore, LLC.
> Q. Now, you just said that you didn't transfer the boat to Game On Offshore LLC.
> A. I never did document with the Coast Guard.
> Q. Okay. Okay. Well, why – I believe, and I mean, correct me if I'm wrong, but your attorney even said in his opening that the

2

> boat is in the name of On Game Offshore LLC at this point. Do you agree or disagree with that?
> A. As far as the bill of sale, yes.
> Q. Okay. So when is this bill of sale dated?
> A. 3/22/16.
> Q. So according to this bill of sale, who was the 100 percent owner of the Game On on 3/22/16?
> A. Game On Offshore LLC.
> Q. Okay. Who did Game On Offshore LLC receive a hundred percent interest in the boat from?
> A. Keith Jenkins.
> Q. Could Keith Jenkins transfer 100 percent of the boat to Game On Offshore LLC if he did not own 100 percent of the boat?
> A. I don't understand what you're trying to get at.

[9] at p. 94-95.

Yet when further questioned about the Coast Guard Bill of Sale, Swick testified:

> Q. So what date does it show this – the version of this bill of sale was sent out?
> A. August of 2016.
> Q. And what date did you say it was signed?
> A. March of 2016.
> Q. Huh. How could a form be signed five months prior to it being sent out?
> A. I back dated it.
> Q. What do you mean you back dated it?
> A. I back dated it.
> Q. Tell me what that means?
> A. I printed it out in August and I back dated it for Mr. Jenkins to sign.

[9] at p. 97.

Swick also testified that he performed extensive repairs to the boat, in accordance with the Ownership and Operating Agreement referenced above, and that the cost for said repairs exceeded $400,000. He also provided testimony that the Bill of Sale was backdated because, shortly after the boat was purchased, he learned that there was an outstanding lien on the boat. He stated that he desired for the lien issue to be resolved before recording. Ultimately, Swick testified that Jenkins has invested $300,000 in the boat, while Swick invested over $400,000 in the boat.

The Bankruptcy Court also heard testimony from Thomas Plante, an expert in boat titling and Coast Guard documentation. Plante testified as follows regarding the ownership of the boat:

> Q. So who is the registered owner of this vessel at this time?
> A. Currently it's Arthur Andrew Holt.
> Q. And what is needed to fix the titling of this boat?
> A. What we propose is to submit a waiver of recordability to the U.S. Coast Guard explaining the circumstances and requesting a waiver. We believe that it will be granted.
> Q. And the result of that waiver would result in what?
> A. That would transfer ownership over into Keith Jenkins' name.

[9] at p. 148-49. Additionally, Plante was questioned about the Bill of Sale and provided the following testimony:

> Q. And in your opinion, after reviewing the entire document, is it possible that the document would've been signed on 3/22/16?
> A. Initially looking at this document you would – you know, you would think okay it was signed on that day. However, on a little bit further investigation we notice that – if you look down in the lower left-hand corner of the first page of the forms, it says CG-1340. That is the Coast Guard's reference to this document, that's how they named this document and that's a standard bill of sale form for the Coast Guard.
> Next to it in parenthesis it would appear that was a date. We wanted to confirm that that was, in fact, a date, so we contacted the Coast Guard to find out what that date indicates, if that is in fact a date and what it indicates.
> They responded and told us that is the release date of the form and so the form was released to the public for use on that date or that month and date or month and year rather.
> Q. So with that in mind, would it have been possible for that bill of sale to have been dated – to have been signed 3/22/16?
> A. Well, since the date is August of 2016, it would be – the form would not have yet been created or release to the public to be signed, so I would say no.

[9] at p. 149-50.

The Bankruptcy Court took the matter under advisement at the conclusion of the hearing. Thereafter, on October 22, 2020, the Bankruptcy Court entered an Order [2] finding that "[t]he debtor owns the boat" and that the boat constituted non-exempt property of the bankruptcy estate. [2] at p. 7. In granting the Trustee's Motion, the Bankruptcy Court specifically held:

4

> *The resolution of this case turns not on legal issues, but a credibility determination*. The lion's share of testimony came from Mr. Swick. In short, the Court *did not find Mr. Swick nor his documentation credible* and finds that he has no ownership interest in the boat. At best, Mr. Swick failed to properly document his interest in a boat worth several hundred thousand dollars. At worst, Mr. Swick fabricated documents. Either way, Mr. Swick's objections fail and the trustee's Motion (Dkt. # 69) is due to be granted.

[2] at p. 2 (emphasis added).

Thereafter, Swick, on behalf of himself and Game On Offshore, LLC appealed to this Court. *See* [1]. As stated in their Brief [4], the Appellants "seek an Order of this Court finding that the bankruptcy court erred when it disregarded the Bill of Sale from Jenkins to Game On Offshore, LLC, and specifically find[ing] that the vessel in question is owned by Game On Offshore, LLC, an LLC owned 50% by the Debtor and 50% by Swick." [4] at p. 16.

*Standard of Review*

"In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal: a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law *de novo*." *Texas Comptroller of Public Accounts v. Adams*, 617 B.R. 84, 90 (N.D. Tex. 2020) (citing *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003); *In re National Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000)); *see also In re McClendon*, 765 F.3d 501, 504 (5th Cir. 2014); *Angles v. Flexible Flyer Liquidating Trust*, 471 B.R. 182 (N.D. Miss. 2012) ("[T]he applicable standard of review by a district court is the same as when the Court of Appeals reviews a district court proceeding.").

*Analysis and Discussion*

As noted above, the Appellants contend that the Bankruptcy Court erred in determining that the Debtor owned the boat free and clear of any encumbrances. As framed by the Appellants, they raise the following issues on appeal:

> (1) Whether the Bankruptcy Court erred when it disregarded the Bill of Sale from Jenkins to Game On Offshore LLC;
>
> (2) Whether the Bankruptcy Court erred when it disregarded other uncontested evidence that proved that the subject vessel was owned by Game On Offshore, LLC, including but not limited to the Debtor's own admission in the General Release of All Claims, dated October 11, 2016;
>
> (3) Whether the Bankruptcy Court erred when it disregarded the uncontested proof of the repairs made to the subject vessel by Appellant, Billy J. Swick, Jr. through his business Gulf Coast Yacht Werks, Inc.

[4] at p. 2.

As previously noted, "[f]indings of fact by the bankruptcy courts are to be reviewed under the clearly erroneous standard and conclusions of law are reviewed *de novo*." *Angles*, 471 B.R. at 184-85 (citations omitted). The Appellants take the position that a *de novo* review is appropriate as to each of these issues on appeal. This Court disagrees. Although the Appellants attempt to frame the issues as "uncontested" issues that are only legal in nature, the record shows that there was much conflicting evidence before the Bankruptcy Court and that the issues were, in fact, not uncontested. The Bankruptcy Court specifically noted that its resolution "turn[ed] not on legal issues, but a credibility determination." [2] at p. 2. While it does not consider itself bound by the Bankruptcy Court's characterization, in reviewing the record as well as the points of appeal raised by the Appellants, this Court finds that the subject disputes arise from findings of fact, as opposed to questions of law, and therefore finds that a clearly erroneous, rather than *de novo*, standard is appropriate.

As to the first issue on appeal, this Court notes that the Bankruptcy Court provided extensive reasoning to support its conclusion that the Bill of Sale was not binding. First and foremost, this Court notes that Plante, the designated expert, testified that there is no way the Bill of Sale was signed on the listed date, as the form itself did not exist on March 22, 2016. The Bankruptcy Court clearly relied on this testimony, specifically emphasizing that "[t]he only other witness to testify was the trustee's

6

expert, Mr. Thomas Plante, who testified that he confirmed with the Coast Guard that the form was not release to the public until August 2016, five months after the purported signature date." [2] at p. 5. The Bankruptcy Court also specifically found "none of [Swick's] testimony, nor the documents [he] introduced in support of it, credible." [2] at p. 4.

Furthermore, the Bankruptcy Court emphasized, Swick attempted to establish the LLC's ownership of the boat by pointing to an insurance document related to the boat dated August 25, 2015. *See* Hearing Ex. Swick 20. Specifically, the document is a Recreational Marine Insurance Proposal from Gallagher Charter Lakes which lists the owner of the boat as "Game On Offshore, LLC, PO Box 1945, Batesville MS 38606." *Id*. However, the LLC was not created until March 14, 2016—several months later. *See* Hearing Ex. Swick 6 (listing the effective date for the LLC as March 14, 2016). In other words, the insurance document upon which Swick relied to establish the LLC's ownership of the boat was dated prior to the existence of the LLC. This Court cannot find that the Bankruptcy Court erred in disregarding that document nor in its determination that this line of testimony further undermined Swick's credibility. Of course, as noted above, Swick also testified that the boat was never documented in the LLC. *See* [9] at p. 93-94.

This Court recognizes the same inconsistencies that the Bankruptcy Court noted in its Order [2]. Consequently, the Court finds that the Bankruptcy Court did not clearly err in making the determination that neither Swick's testimony, nor his supporting documentation introduced at the hearing, was credible, and ultimately finding that the Bill of Sale was not controlling. The Court rejects the first point of appeal raised by the Appellants.

The Appellants' second point of appeal is that the Bankruptcy Court erred by disregarding "other uncontested evidence that proved that the subject vessel was owned by Game On Offshore, LLC, including but not limited to the Debtor's own admission in the General Release of All Claims, dated October 11, 2016." [4] at p. 2. The General Release of All Claims is a document related to an

7

insurance claim "arising out of an alleged lighting strike to the Boat in Florida on or about January 29, 2016[.]" Hearing Ex. Swick 25. The Debtor signed the Release on October 11, 2016, and one of the recitals therein states that Jenkins is "a manager member of Game On, a limited liability company." Hearing Ex. Swick 25-27.

Regarding the Release, this Court again notes discrepancies concerning the LLC's ownership of the boat at the pertinent time. Although the purported lightning strike occurred on January 29, 2016, the LLC was not created until March 14, 2016. *See* Hearing Ex. Swick 6. In this Court's view, this creates yet another inconsistency.

Although the Appellants frame the issue as whether the Bankruptcy Court disregarded certain "uncontested" evidence, the simple fact is that neither the ownership of the boat, nor the evidence surrounding said ownership, was uncontested. As noted above, the Bankruptcy Court considered extensive testimony and documentation in making its determination that the LLC did not own the boat. The Bankruptcy Court's ultimate decision was based on a credibility determination at the hearing, and this Court, which has not had the same opportunity to view the witnesses and judge their credibility, is not inclined to disturb the Bankruptcy Court's findings. *See*, *e.g.*, *Guzman v. Hacienda Records and Recording Studio, Inc.*, 808 F.3d 1031, 1038 (5th Cir. 2015) (affirming under a clearly erroneous standard when the appellant "merely recite[d] evidence fully presented at trial and thoroughly analyzed by the district court through the lens of inconsistent and unclear trial testimony and several resulting credibility determinations."). This Court disagrees with the Appellants' characterization of the evidence before the Bankruptcy Court regarding the boat's ownership and squarely rejects this point of appeal.

Finally, the Court turns to the Appellants' third contention—that the Bankruptcy Court erred by "disregard[ing] the uncontested proof of the repairs made to the subject vessel" by Swick. [4] at p. 2. On this point, the Appellants assert that Swick performed extensive work and repairs to the boat

(totaling approximately $400,000.00) and that Swick and the Debtor had previously agreed that Swick's contribution to the boat would be $300,000.00. The Appellants emphasize that there was no evidence presented at the hearing to dispute that the work was performed, and they further aver that the Bankruptcy Court gave too much weight to the fact that Swick never sent the invoices to the Debtor.

> The Bankruptcy Court's findings on this point were as follows:
>
> > Mr. Swick's credibility was further undermined by his testimony as to whether the debtor still owed him money. Mr. Swick admitted that he had made loans to the debtor totaling over six figures. He initially testified that the debtor had fully repaid him and that his claims regarding the boat were not an attempt to collect. When confronted with his own documents that show were he claims to have provided over $400,000.00 of labor and materials for the boat, and that the ownership agreement provides that anything over $300,000.00 would be split evenly, Mr. Swick then admitted he is still owed more than $55,000.00 from the debtor. Further, the monthly invoices detailing Mr. Swick's work on the boat begin in June 2015 and continue through April 2019. Mr. Swick testified that although he created the invoices monthly, he never sent any of them to the debtor until after the bankruptcy case was filed. The Court cannot accept that Mr. Swick provided in excess of $400,000.00 in labor and materials to satisfy (in fact, more than satisfy) his consideration obligations over a period of four years and yet never sent his partner a single one of the invoices.

[2] at p. 5-6 (internal citations omitted).

This Court agrees with the Bankruptcy Court's analysis. Like the Bankruptcy Court, this Court struggles to accept Swick's contention that he performed such extensive repairs to the boat (over and beyond the $300,000 which was purportedly agreed upon) without notifying the Debtor of the same.[1] This Court certainly cannot find that the Bankruptcy Court erred in rejecting such a theory, particularly when considered in light of the extensive discrepancies scattered throughout Swick's testimony. *See, e.g., Ford v. Potter*, 354 F. App'x 28, 31 (5th Cir. 2009) (quoting *Dunbar Med. Sys.*

---

[1] This is especially true considering the purported agreement that improvements in excess of $300,000 would be agreed upon by the Debtor and Swick.

*Inc. v. Gammex Inc.*, 216 F.3d 441, 453 (5th Cir. 2000) ("[T]he burden of showing that the findings of the district court are clearly erroneous is heavier if the credibility of witnesses is a factor in the trial court's decision."). This Court rejects the Appellants' third issue on appeal.

Again, as noted above, the Court finds that a clearly erroneous standard is appropriate. Nevertheless, even under a *de novo* review, the Court would reach the same conclusion, as it finds no error in the Bankruptcy Court's analysis or its application of the law. The Appellants have failed to establish that the Bankruptcy Court erred.

*Conclusion*

For the reasons set forth above, the Court finds that the Bankruptcy Court did not err in granting the Trustee's Motion. The Order of the Bankruptcy Court is AFFIRMED. This CASE is CLOSED. An Order consistent with this Memorandum Opinion will be entered this day.

SO ORDERED, this the 21st day of September, 2021.

    /s/ Sharion Aycock  
    UNITED STATES DISTRICT JUDGE